**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| GWENDOLYN S. IJAMES, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | **AND RECOMMENDATION** |
| v. | ) | |
| | ) | 1:08CV777 |
| AUTUMN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's motion to dismiss or, in the alternative, for summary judgment (docket no. 4). Plaintiff has responded in opposition to the motion. In this posture, the matter is ripe for disposition. The parties have not consented to the jurisdiction of a magistrate judge; therefore, the court must deal with the motion by way of a recommendation. For the following reasons, the court will recommend that Defendant's alternative motion for summary judgment be denied and that this matter proceed to trial.

**PROCEDURAL HISTORY**

After being terminated from her employment with Defendant Autumn Corporation, Plaintiff filed this lawsuit, asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Specifically, Plaintiff alleges that Defendant interfered with her right to take leave under the FMLA and terminated her employment in retaliation for her attempt to exercise those rights. As noted, Defendant has filed a motion to dismiss or, in the alternative, for summary judgment.

## FACTS[1]

Plaintiff was employed by Defendant at its Mocksville facility as a Certified Nursing Assistant ("CNA") from June 25, 1998, until she was terminated on October 26, 2006. (IJames Aff. ¶ 3.) On October 23, 2006, Plaintiff had surgery on her left knee.[2] (*Id.* ¶ 25.) The operation was necessary due to ongoing pain and swelling, which had progressed to the point that Plaintiff could not stand or walk. (*See id.* ¶ 6.)

Plaintiff contends that no later than September 1, 2006, Plaintiff notified CNA Coordinator, Lisa Smith ("Smith"), of her upcoming operation, which was scheduled for October 23, 2006.[3] (*Id.* ¶ 14.) Plaintiff's intention to take time off for the operation and necessary recovery period was communicated to Smith on numerous occasions.[4] (*See, e.g.*, *id.* ¶¶ 17-20.) Smith repeatedly informed Plaintiff that she would make the scheduling accommodations necessary for Plaintiff's surgery and recovery period. (*See, e.g.*, *id.* ¶¶ 15, 18-20.) Plaintiff's planned absence was well

---

[1] Because the court is treating the motion as one for summary judgment, the facts are presented in the light most favorable to Plaintiff, and the court will note where facts are disputed.

[2] The surgery had originally been scheduled for September 5, 2006; however, Plaintiff rescheduled the operation for October 23, 2006. (IJames Aff. ¶ 8.)

[3] As will be discussed *infra*, Defendant denies that Plaintiff gave Defendant proper notice of her intent to take FMLA leave; thus, notice is a disputed issue of fact.

[4] According to Plaintiff, the Director of Nursing, Sonya Hughes, "had instructed [Plaintiff] and other CNAs from Third and First Shift in a group meeting prior to July 26, 2006 that all matters the CNAs had regarding scheduling, vacation, time off, and related matters were to be presented directly to CNA Coordinator Smith." (IJames Aff. ¶ 5.)

known to many other CNAs at Defendant's Mocksville facility. (*See* Brown Aff. ¶ 13; Hogue Aff. ¶¶ 7-9; Rice Aff. ¶¶ 3-5; Mickalowski Aff. ¶ 3; Denson Aff. ¶¶ 4-5; Custer Aff. ¶ 6.)

In addition, on or about August 25, 2006, Plaintiff spoke with Defendant's Payroll and Accounts Payable Clerk, Ashley Deas ("Deas"), about her upcoming knee surgery.[5] (IJames Aff. ¶ 12.) Deas provided Plaintiff with a form that was needed for her anticipated absence. (*Id.*) Plaintiff did not accept the form because all available copies were of such poor quality that she could not read the document in its entirety. (*See id.*) Deas stated that she would get Plaintiff another copy later. (*Id.*) Furthermore, "Ms. Deas did not tell [Plaintiff] anything about when [the form] was required to be completed or returned relative to [Plaintiff's] surgery or [her] time off." (*Id.*)

On October 20, 2006, Plaintiff again asked Deas for the necessary forms for her surgery and informed Deas that the surgery was scheduled for October 23, 2006. (*Id.* ¶ 21.) Deas gave Plaintiff a form without any explanation of when it needed to be returned and made no indication that Plaintiff had to have approval for her anticipated absence. (*See id.*) On October 23, 2006, the day of Plaintiff's operation, Plaintiff left Defendant's Mocksville facility after working the third shift, which ended at 6:00 a.m. (*Id.* ¶ 22.) At the end of that shift, the work schedule at

---

[5] At this time, Plaintiff was referencing the original surgery date of September 5, 2006. (IJames Aff. ¶ 12.)

Plaintiff's nurses' station did not have her scheduled for the upcoming third shift that was to begin at 10:00 p.m. on the evening of October 23, 2006.  (*Id.*)  In fact, October 23, 2006, was Plaintiff's regularly scheduled day off.[6]  (*Id.*)

On the morning of October 24, 2006, Plaintiff telephoned Smith to inform her that the FMLA notice form she had received from Deas would not be completed by her doctor until the end of the week.  (*Id.* ¶ 26.)  At this time, Smith transferred Plaintiff to the Director of Nursing, Sonya Hughes ("Hughes").  (*Id.*)  Hughes informed Plaintiff that Plaintiff had been scheduled to work the third shift beginning on the evening of October 23, 2006, and that she had not properly arranged time off from work for that shift; therefore, Plaintiff's absence was designated as a "no call - no show" absence under Defendant's employee attendance policy.[7]  (*See id.* ¶¶ 27-28.)  Plaintiff protested, stating that the Monday shift was her day off.  (*Id.* ¶ 27.)

---

[6] Before July 2006 and up until the date of Plaintiff's termination, she was assigned to the Third Shift.  (IJames Aff. ¶ 10.)  "Third Shift began at 10:00 p.m. and ended at 6:00 a.m. the following morning."  (*Id.*)  Plaintiff's schedule during this period was based on a two-week cycle, "reporting for work at 10:00 p.m. on each of the following nights during the two week cycle: Monday, Tuesday, Wednesday, Thursday, Saturday, Sunday, Tuesday, Wednesday, Thursday and Friday."  (*Id.*)  Plaintiff contends that, therefore, on the evening of October 23, 2006 (a Monday), Plaintiff was not scheduled to work based on this two-week rotation cycle.  Defendant contends that Plaintiff *was* in fact scheduled to work this shift and that she was a "no-show."  Defendant appears, however, to be confused about when the Third Shift was because Defendant asserts in its brief that Plaintiff was scheduled to work a shift October 23, 2006, *beginning at 6:00 a.m.*  As noted, however, Third Shift *began* at 10:00 p.m. and *ended* at 6:00 a.m.  (*See* Def.'s Mem. Supp. Mot. to Dismiss at 6, docket no. 5; Asbill Aff. ¶ 10.)

[7] Defendant's employee attendance policy defines "no call - no show" as a "failure to call in or be present to work [employee's] scheduled shift.  One (1) NCNS may result in immediate dismissal."  (Asbill Aff., ex. 1.)

She then offered to come to work for the Tuesday shift, which Hughes rejected. (*See id.* ¶ 28.) Plaintiff then agreed that she would come in to talk to Hughes on October 26, 2006. (*Id.*)

On October 26, 2006, Plaintiff met with Hughes and the Administrator for the Mocksville facility, Darin Asbill ("Asbill"). (*Id.* ¶ 29.) Asbill immediately informed Plaintiff that her employment was terminated for "'not letting Autumn Care know'" of her need for an absence. (*Id.*) Plaintiff protested, stating that she had notified Smith regarding the absence and had received her approval on several occasions. (*Id.* ¶ 30.) She also described her conversation with former CNA Coordinator Hogue ("Hogue") about the process for scheduling leave, which Hogue had described as simply bringing in a doctor's statement when Plaintiff was ready to report back to work. (*See id.*) At this point, Asbill stated that he would speak to Hogue about the matter, and Hughes stated that she would speak to Smith and Deas. (*Id.* ¶ 31.)

Asbill subsequently informed Plaintiff that he had spoken with Hogue, that Hogue had not corroborated Plaintiff's account of what happened, and that he would not change the termination. (*Id.* ¶ 32; Hogue Aff. ¶ 13.) Hogue disagrees with Asbill's account of their conversation. Indeed, in an affidavit, Hogue corroborates Plaintiff's statement that Hogue did not require any specific forms from Plaintiff before Plaintiff took leave for her surgery:

> Throughout the time I was CNA Coordinator, I removed CNAs from the CNA work schedule without requiring any written requests or medical statements whenever the CNA informed me that they needed time off

for health, illness, or family medically related reasons. The CNA did not have to provide any documents or forms to me before I took them off the schedule. I would not place the CNA back on the work schedule until they returned to work with a medical release to return to work.

(Hogue Aff. ¶ 3.)

After Asbill told Plaintiff she was fired, Plaintiff then contacted Defendant's District Manager, Tom Koontz, and related the circumstances of her termination and provided three witnesses who had observed her notification to Smith and Smith's approval of her absence. (IJames Aff. ¶ 33.) Asbill then telephoned Plaintiff and stated "that everything was on hold until further investigation." (*Id.* ¶ 34.) On November 1, 2006, Asbill informed Plaintiff that Defendant's decision to terminate her employment was "final." (*Id.* ¶ 35.)

Defendant's Attendance and FMLA Leave Policies

Under Defendant's written attendance policy, which Plaintiff acknowledged and signed, an employee's failure to call in or be present to work the employee's scheduled shift (a "no call/no show") may result in immediate dismissal after one violation. (*See* Autumn Care of Mocksville's Employee Attendance Policy, attached as Ex. 1 to Asbill Aff.; Gwendolyn Ijames' acknowledgment of receipt of attendance policy dated September 14, 2005, attached as Ex. 4 to Asbill Aff.) Employees must call in at least two hours in advance of an absence. (*Id.*)

Defendant also has an FMLA policy, which requires an employee seeking FMLA leave to provide at least 30 days written notice when the need for leave is

-6-

foreseeable. (*Id.*) If leave is to begin in less than 30 days from the date notice is given, the employee must give as much notice as practicable under the circumstances. (*Id.*) Defendant further requires employees seeking FMLA leave to complete a notice form, which specifically informs them of their rights and obligations under the FMLA. (*See* Autumn Corporation's Notice Upon Request for FMLA Leave Form, attached as Ex. 3 to Asbill Aff.) Defendant's FMLA Policy further provides that the employee requesting FMLA leave must provide a medical certification form completed and signed by the employee's health care provider when the request for leave is due to the employee's own serious health condition. (*Id.*) The medical certification form must be completed by the health care provider and returned to Defendant no later than 15 calendar days after the date leave is requested. (*Id.*) It is undisputed that Plaintiff signed and acknowledged that she had read and understood Defendant's FMLA policy. (*See* Family and Medical Leave Policy Verification of Orientation dated June 25, 1998, attached as Ex. 5 to Asbill Aff.) The parties also appear to agree that Plaintiff did not return the completed FMLA notice form or an advance medical certification required under Defendant's FMLA leave policies before the scheduled day of her surgery. (*See* Asbill Aff. ¶¶ 8, 9.)

**STANDARD OF REVIEW**

Summary Judgment

Both parties have submitted affidavits in support of their positions. The court will therefore treat the motion as one for summary judgment. Summary judgment

-7-

is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**DISCUSSION**

Plaintiff asserts four claims in her complaint for violations of her rights under the FMLA: (1) that Defendant denied Plaintiff's right to FMLA leave for her surgery

-8-

and recovery; (2) that Defendant terminated Plaintiff for the purpose of denying her FMLA leave; (3) that the termination occurred as a result of Plaintiff's desire to exercise her right to FMLA leave; and (4) that Plaintiff was not restored to full employment status following her FMLA leave. (*See* Compl. at 12, docket no. 1.) Defendant has identified three arguments in support of summary judgment: (1) Plaintiff's claims are time-barred by the statute of limitations for FMLA actions; (2) Plaintiff did not comply with Defendant's usual and customary notice and procedural requirements for requesting FMLA leave, and she was therefore not entitled to take FMLA leave; and (3) Defendant terminated Plaintiff's employment for legitimate, non-discriminatory reasons. (*See* Def.'s Mem. Supp. Mot. to Dismiss at 5-8, docket no. 5.)

FMLA Statute of Limitations

I first note that the FMLA contains two separate statutes of limitations. For non-willful violations of the FMLA, an action must generally be brought no "later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." *See* 29 U.S.C. § 2617(c)(1). Where an action is based on a "willful violation" of the FMLA, however, the statute of limitations period is three years. *Id.* § 2617(c)(2). The parties disagree as to whether the two- or three-year statute of limitations applies in this case. The parties also disagree over the triggering date for the applicable statute of limitations–i.e., the date of the last event constituting the alleged violation for which Plaintiff's action is brought.

-9-

Plaintiff argues that Asbill originally terminated Plaintiff's employment on October l26, 2006, but then advised her that the matter was "on hold until further investigation." (*See* Compl. at 7, docket no. 1.) Therefore, she argues that her termination was not "final" until her conversation with Asbill on November 1, 2006. (*See* Pl.'s Mem. Opp'n Mot. to Dismiss at 10, docket no. 10.) By contrast, Defendant argues that "the date of the last event constituting the alleged violation" was October 26, 2006, given that this was the day on which Plaintiff received notice of her termination. (*See* Def.'s Reply at 4-5, docket no. 11.) Plaintiff filed this action on October 28, 2008. If Plaintiff's employment was terminated on October 26, 2006, then she is barred from bringing her FMLA claim under the general two-year statute of limitations, and the court must then address whether the Complaint sufficiently alleges a willful violation by Defendant so that the three-year statute of limitations applies. If, however, Plaintiff's employment was terminated on November 1, 2006, then she is not barred by the two-year statute of limitations. For the following reasons, I agree with Defendant that the date of termination was October 26, 2006.

In *Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998), an ADA discrimination case, the employer notified the plaintiff employee on June 30, 1992, that his employment would be terminated on September 29, 1992. *Martin*, 135 F.3d at 309. For purposes of the employee's subsequent ADA discrimination claim, the Fourth Circuit held that the employee's "discrimination cause of action accrued on June 30, 1992, when [the employer] informed [the employee] that his

-10-

discharge–though not to take effect until September 29, 1992–was imminent." *Id.*
at 310. The court further observed:

> [A]s the Seventh Circuit recently explained, "numerous cases hold that
> a separation at a time established by an earlier decision is *not* a fresh
> act of discrimination. Only the original decision to let the employee go
> is subject to analysis under the anti-discrimination laws. An employer's
> refusal to undo a discriminatory decision is not a fresh act of
> discrimination."

*Id.* (citations omitted) (quoting *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 296-
97 (7th Cir. 1995)).

Here, by Plaintiff's own allegations, Defendant first gave her an unequivocal
notice of termination on October 26, 2006, and October 26 was the date on which
Plaintiff stopped working as an employee for Defendant. Although Plaintiff argues
that Defendant later told her that the action was under review, as of October 26,
2006, Plaintiff's employment ended and she believed she was fired. Therefore,
October 26, 2006, was the triggering date for the statute of limitations. Assuming
that a two-year statute of limitations applies, the Complaint was not timely filed
because this court did not enter a Notice of Electronic Filing until more than two
years later on October 28, 2008.[8]

<u>Whether the Court Should Excuse the Untimely Filing Because of Counsel's
Electronic Filing Problem</u>

---

[8] Because October 26, 2008, fell on a Sunday, the statute of limitations period
ended the next day, Monday October 27. *See* FED. R. CIV. P. 6(a).

-11-

In response to Defendant's motion for summary judgment, Plaintiff contends that even if the two-year statute of limitations applies, the court should excuse the untimeliness because it was due to an electronic filing problem encountered by counsel. In an affidavit, Plaintiff's counsel Herman Stephens explains that on Friday, October 24, 2008, he drafted and signed the Complaint and scanned it into a .pdf file to file electronically with the court. (Stephens Aff. ¶ 2.) Counsel states that this was the first time he attempted to file a Complaint electronically. (*Id.*)

Between 10:00 and 11:00 p.m. on Friday, October 24, 2008, counsel accessed the court's CM/ECF system, entered the necessary information for commencement of a civil action, and submitted the Complaint for filing. (*Id.* ¶ 3.) The system created Case No. 1:08-cv-00777, and the system displayed a Case Summary for the case stating that it was "Filed 10/24/2008." (*Id.*) Counsel states that he then used a credit card with sufficient credit to submit payment of the $350.00 filing fee to the court. (*Id.* ¶ 4.) Counsel states that this was his first occasion to use the electronic fee payment procedure. (*Id.*) Counsel states that "[d]espite attempting to exercise great care, I inadvertently overlooked the penultimate step required before submission of payment and failed to check the small box authorizing a charge to [the] credit card." (*Id.*) Counsel states that when he pressed the "Submit Payment" button on the screen, the process froze and would not allow him to back up a step to check the authorization. (*Id.*)

-12-

Counsel states that he attempted to reach Pay.gov for assistance in completing the fee payment that night and over the weekend to no avail, and he also emailed a completed summons to this court, with a message explaining the late filing and credit card processing issue. (*Id.* ¶¶ 5-7.) On Tuesday, October 28, 2008, the clerk's office informed counsel that the Complaint had not been filed because of non-receipt of the filing fee. (*Id.* ¶ 8.) The clerk's office advised counsel to resubmit the Complaint and go through the process again, which counsel did. The Notice of Electronic Filing was issued that day, Tuesday October 28. (*Id.*)

Under Local Rule 5.3 and the court's Standing Order 34 dated January 26, 2005, "a document filed electronically is deemed filed at the date and time stated on the 'Notice of Electronic Filing' that is automatically generated from CM/ECF." Standing Order 34, ¶ 9; L.R. 5.3. If the two-year statute of limitations applies, I find that the Complaint is untimely because although the Complaint was submitted on Friday, October 24, 2008, counsel did not supply the proper credit card information until Tuesday October 28; thus, the Complaint was not deemed to be filed by this court until October 28, which was the date the "Notice of Electronic Filing" was automatically generated from CM/ECF.

Furthermore, the circumstances in this case do not justify equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *See Pace v. DiGuglielmo*, 544 U.S.

-13-

408, 418 (2005). Here, Plaintiff had notice of her FMLA claim as early as October 26, 2006, and it is clear from her counsel's demand letter to Defendant dated April 15, 2007, that Plaintiff hired her current counsel to represent her more than a year-and-a-half before the two-year limitations period expired (assuming the two-year statute of limitations applies). (*See* Ex. 1 to Def.'s Reply.) Plaintiff's counsel, however, waited until the very end of the two-year statutory limitations period to attempt to electronically file the Complaint in this action. The court should not excuse the late filing because of counsel's mistake. Counsel has even admitted in his own affidavit that his attempt to file Plaintiff's complaint was the first time he had ever attempted to file a Complaint using the court's electronic filing system, and that it was the first time he used the electronic fee payment procedure. Given that he was unaccustomed to the electronic filing system, counsel's attempt to file the Complaint so close to the deadline is inexcusable. Common sense should have informed counsel that he needed to make sure well before the deadline for filing how to use the system properly. Therefore, the court should not excuse the late filing due to counsel's error.[9]

The result, then, is that the Complaint was not filed within two years of Plaintiff's termination. Plaintiff's FMLA claim is therefore time-barred unless she has

---

[9] Furthermore, the fact that Plaintiff's counsel (rather than Plaintiff) caused the late filing is immaterial since the actions of a privately retained attorney are imputed to the client. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396-97 (1993).

sufficiently presented evidence to withstand summary judgment as to whether she has shown a "willful violation" of the FMLA so that the three-year statute of limitations applies.

The Merits of Plaintiff's Claims for Interference with FMLA Leave and Retaliation for Exercising FMLA Leave, and whether Plaintiff Has Presented Evidence of Willfulness Sufficient to Survive Summary Judgment

Before addressing whether Plaintiff has presented evidence of a "willful violation" sufficient to overcome summary judgment as to whether the three-year statute of limitations applies, the court will discuss the general requirements for showing a violation under the FMLA.  Under the FMLA, an eligible employee is "entitled to a total of 12 workweeks of leave during any 12-month period" for family- and health-related matters, *see* 29 U.S.C. § 2612(a)(1), and has a right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment," *id.* § 2614(a)(1)(A)- (B).  Employees, however, have several duties concomitant to their right to take FMLA leave.  For instance, where leave is foreseeable, an employee must provide the employer with at least thirty days notice before the leave is to begin.  *Id.* § 2612(e)(1).  The employee is not, however, required to specifically designate the leave as "FMLA" leave to benefit from the FMLA's protections.  Rather, the employer is responsible for determining whether the FMLA applies and whether to consider

-15-

the requested leave as FMLA leave.  *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293 (4th Cir. 2009).

The first FMLA prohibition makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  Courts have classified violations under this section as violations of a "prescriptive right," also known as "interference" or "entitlement" claims.  *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006).  The second FMLA prohibition makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).  Courts have classified violations under this section as violations of a "proscriptive right," also known as "retaliation" or "discrimination" claims.  *Yashenko*, 446 F.3d at 546.

Here, Plaintiff alleges violations of both the "interference" and "retaliation" sections of the FMLA.  That is, she contends that by terminating Plaintiff's employment, Defendant both interfered with her right to take FMLA leave and also retaliated against her for attempting to take FMLA leave.  Thus, the court sets forth the prima facie cases for both FMLA interference and retaliation:

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.

-16-

*Rodriquez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). The parties do not dispute that Plaintiff has satisfied the first three prongs of the prima facie case for showing interference with an entitlement to FMLA benefits. Rather, the dispute on summary judgment is whether Plaintiff gave Defendant adequate notice of her intention to take FMLA leave, and whether Defendant denied Plaintiff the FMLA rights to which she was entitled.

The Fourth Circuit treats FMLA claims alleging retaliation as analogous to those derived under Title VII; consequently, they are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). *See Yashenko*, 446 F.3d at 550-51 (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir 2001)). To establish a successful retaliation claim, Plaintiff "must first make a prima facie showing 'that [s]he engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity.'" *Id.* at 551 (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). If the employee provides sufficient evidence to establish a prima facie case of retaliation, and if the employer then offers a non-discriminatory reason for the termination, the burden then shifts back to the employee to show that employer's proferred explanation was a pretext for FMLA retaliation. *Id.* (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)).

-17-

In support of the motion for summary judgment, Defendant first contends that Plaintiff failed to give Defendant adequate notice of her intention to take FMLA leave because she did not comply with Defendant's usual and customary notice and procedural requirements for requesting FMLA leave. (*See* Def.'s Mem. Supp. Mot. to Dismiss at 6-7, docket no. 5.) That is, Defendant contends that Plaintiff did not give thirty days advance notice of a foreseeable absence, submission of medical certification in advance of absence, and advance notification of absence to Plaintiff's supervisor.[10] (*See id.*)

I find that Plaintiff has presented enough evidence to overcome summary judgment as to whether she gave Defendant adequate notice of her intent to take FMLA leave. Plaintiff has presented her own affidavit, as well as numerous affidavits by other employees, corroborating her contention that she gave repeated informal notice to her supervisors about her October surgery. By contrast, Defendant's only support for its argument that Plaintiff failed to give Defendant adequate notice of her intent to take FMLA leave is through an affidavit by Administrator of Autumn Care of Mocksville Darin Asbill. (Asbill Aff. ¶¶ 8-10.) Specifically, Asbill states that "[f]rom reviewing Autumn's records regarding the surgery [Plaintiff] scheduled in October

---

[10] Defendant also states that "[a]nother 'usual and customary' requirement at Autumn is for an employee to let her supervisor know, no later than two hours before her scheduled start time, that she is going to miss work that day due to an illness." (Def.'s Mem. Supp. Mot. to Dismiss at 7, docket no. 5.) This has little, if any, connection to any provision of the FMLA or associated regulations. Rather, this statement is most applicable to Defendant's employee attendance policy.

-18-

2006, [he] learned that" (1) Plaintiff obtained Defendant's FMLA notice form from Deas on or about August 21, 2006, (2) Plaintiff requested a second copy of the form during the week of October 10, 2006, and (3) neither copy was ever returned.  (*Id.* ¶ 8.)  Rule 56(e)(1) provides,

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

FED. R. CIV. P. 56(e)(1).  Asbill states in his affidavit that his knowledge is based on a review of Defendant's "records," yet no copy of the personnel records is attached to the affidavit.  Furthermore, Asbill states that Defendant did not learn of Plaintiff's knee surgery until October 23, 2006, and that Plaintiff did not request time off before her surgery by notifying Deas, Hughes, or Smith.  (Asbill Aff. ¶ 9.)  Unfortunately for Defendant, however, this statement lacks the personal knowledge and competency necessary to support admissible testify regarding these assertions, as required under Rule 56(e)(1).  Finally, Asbill states that Plaintiff was "already on a final written warning for previous instances of absenteeism and for conduct and performance problems under Autumn's policies."  (Asbill Aff. ¶ 11.)  Defendant has attached no personnel records, however, to corroborate Asbill's statement that Plaintiff was "already on a final written warning" when she was terminated.

Finally, Defendant contends that it only took adverse action against Plaintiff when she failed to comply with Defendant's advance notice and certification

requirements, which Defendant contends were part of Defendant's "usual and customary notice and procedural requirements for requesting leave." Defendant contends that Plaintiff's unexcused absences in violation of Defendant's attendance policy resulted in Plaintiff's termination and "in no way implicated any FMLA rights." (*See* Def.'s Mem. Supp. Mot. to Dismiss, at 8.)

The regulation cited by Defendant regarding "usual and customary notice," which was in effect during 2006, provided:

> An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. *However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice.*[11]

---

[11] Significantly, the current language of section 825.302(d) places a stricter burden on the employee with regard to complying with the employer's usual and customary notice and procedural requirements by allowing the employer to deny or delay leave if "no unusual circumstances justify the failure to comply":

> An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. An employee also may be required by an employer's policy to contact a specific individual. . . . *Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.*

29 C.F.R. § 825.302(d) (2008) (emphasis added).

-20-

29 C.F.R. § 825.302(d) (2006) (emphasis added). The applicable regulations further provided that if an employee fails to give adequate notice, the employer may choose between two courses of action: it may waive the notice requirements or it may delay the employee's leave. *Id.* § 825.304(a), (b) (2006). Thus, as the regulatory language makes clear, even if Plaintiff failed to follow Defendant's internal procedures, she would still be entitled to FMLA leave if she gave timely verbal or other notice. Plaintiff has sufficiently alleged she provided sufficient notice to satisfy the "verbal or other notice" requirement of 29 C.F.R. § 825.302(d), including advance notice to her immediate supervisor regarding her anticipated medical leave. (IJames Aff. ¶¶ 11-14, 17-21.)

Plaintiff has also provided significant evidence casting doubt on Defendant's argument that Defendant in fact had a "usual and customary" practice for requesting FMLA leave. (*Id.* ¶ 9; Brown Aff. ¶¶ 8-11; Hogue Aff. ¶¶ 3-4,12.) For instance, as for Plaintiff's failure to turn in her medical certification form before her surgery, the regulations in effect as of Plaintiff's termination provided that "[i]n the case of foreseeable leave, an employer *may delay* the taking of FMLA leave to an employee who fails to provide timely certification after being requested by the employer to furnish such certification (i.e., within 15 calendar days, if practicable), until the required certification is provided."[12] 29 C.F.R. § 825.311 (2006) (emphasis added).

---

[12] The FMLA and accompanying regulations provide that an employer may require an employee to submit a medical certification before the employer authorizes FMLA leave. *See* 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(b). FMLA regulations outline the medical

-21-

Thus, the regulations provided that Defendant could delay Plaintiff's taking of FMLA leave until she turned in her certification form, but they clearly do not authorize termination of Plaintiff's employment for Plaintiff's failure to turn in her medical certification form. *See Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006) (stating that even if the employee had failed to provide the certification in a timely fashion, the employer's "remedy under the regulations was once again delayed leave, not termination").

Moreover, Defendant has not presented any evidence to contradict Plaintiff's contention in her affidavit that none of her supervisors told her when giving her the medical certification form that the failure to turn in the medical certification form before she left for her surgery would result in denial of FMLA leave. Nor has Defendant presented any evidence showing that any of Plaintiff's supervisors approached her before her scheduled surgery to remind her that she had not turned in her certification form and that she was required to do so before taking FMLA leave. In other words, although Defendant's written policies regarding FMLA leave (which Plaintiff signed when she became an employee) required a medical certification to be returned no later than 15 calendar days after the date leave was requested, Plaintiff argues that it was Defendant's custom and practice *not* to require the employee to turn in the medical certification form within that 15-day period. That

certification process, including the respective duties of the employer and employee. *See, e.g.*, 29 C.F.R. §§ 825.305 - 825.308.

is, Plaintiff contends that no one ever indicated to her that her taking of FMLA leave was going to be a problem or that her failure to turn in her paperwork before she left for surgery was going to result in denial of FMLA leave.

Furthermore, Plaintiff has presented evidence at summary judgment to show that Defendant, in practice, had a far less formal process for requesting FMLA leave than as presented in Asbill's affidavit.  For instance, CNA Hogue states in her affidavit that she was in charge of handling requests for FMLA leave by the CNA, and that when a CNA made clear that the CNA was requesting leave, she (Hogue) required only that the CNA have a physician's release when the CNA returned to work.  (*See* Hogue Aff. ¶¶ 3-4; *see also* Brown Aff. ¶¶ 8-9 (another CNA, attesting that she did not submit any forms or documents related to her medical absence until the night before her scheduled surgery, and that she was allowed to take the time as FMLA leave.)  Thus, despite Defendant's written policies to the contrary, Plaintiff has presented evidence that, as a practical matter, FMLA leave was allowed to employees even if a medical certification form was not turned in within fifteen days of requesting leave.[13]  In sum, Plaintiff has presented sufficient evidence on

_____

[13]  In other words, this is not a case in which the employer clearly informed the employee that it was going to deny her FMLA leave if she did not return her FMLA forms by a certain, specified date.  That is, Defendant presents no evidence to contradict Plaintiff's evidence that none of her supervisors informed her that she would have to submit the medical certification form before she left for her surgery.  *See Spencer v. Marygrove Coll.*, Civil Action No. 07-CV-11135, 2008 WL 4056319, at *9-10 (E.D. Mich. Aug. 26, 2008) (denying summary judgment as to FMLA entitlement and retaliation claims where plaintiff admitted that she did not return her medical certification form within fifteen days, but where she asserted that the defendant never communicated to her that the form must be returned within such time period).

Case 1:08-cv-00777-JAB-WWD   Document 12   Filed 07/20/09   Page 23 of 28

summary judgment to show that she complied with the notice requirements so that she was entitled to take FMLA leave. Regarding the causal connection between Plaintiff's attempt to take protected FMLA leave and the adverse employment action taken against her (termination of her employment), Plaintiff has presented sufficient evidence to survive summary judgment as to this factor as well, given the temporal proximity between the two events. Plaintiff attempted to begin her FMLA leave on October 23, 2006, and was denied the opportunity to return to work the following day; furthermore, her employment was terminated shortly thereafter on October 26. (*See* IJames Aff. ¶ 28.) "While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" *Yashenko*, 446 F.3d at 551 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). In sum, Plaintiff has presented sufficient evidence on summary judgment showing that she engaged in a protected activity by attempting to take FMLA leave and that Defendant interfered with her right to take FMLA leave and retaliated against her by firing her. Therefore, Plaintiff has set forth a prima facie case for both interference and retaliation under the FMLA.

Defendant's Contention that Plaintiff Was Terminated for Legitimate, Non-Discriminatory Reasons

Because Plaintiff has met the prima facie case for both interference and retaliation under the FMLA, the burden then shifts to Defendant to present a

-24-

legitimate, non-discriminatory reason why it fired Plaintiff. Defendant argues "that Plaintiff's termination resulted from her unexcused absences not protected by the FMLA." (Def.'s Mem. Supp. Mot. to Dismiss at 2, docket no. 4.) The only support that Defendant provides for this argument, however, is Asbill's single statement in his affidavit that "[o]n October 26, 2006, [Defendant] terminated [Plaintiff's] employment for failing to call in for her planned absences [on October 23, 2006] in violation of the Company's attendance policy" and that "[Plaintiff] was already on a final written warning for previous instances of absenteeism and for conduct and performance problems under [Defendant's] policies." (Asbill Aff. ¶ 11.) Defendant has not, however, submitted *any* personnel records regarding Plaintiff's alleged past absences to which Asbill alludes in his affidavit, nor has Defendant presented any documentation supporting Asbill's statement that Plaintiff was on "final written warning" before she was fired.

Furthermore, as for Plaintiff's supposed failure to call in for her planned absence on October 23, Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether Plaintiff in fact did notify Defendant of her planned absence on October 23. Plaintiff has stated that the third shift, beginning on the evening of October 23, 2006, was her regularly scheduled day off. (*See* IJames Aff. ¶¶ 10, 22.) She has also provided evidence that she informed Smith of Plaintiff's intention to be out of work on October 23, 2006, for her surgery, and that Smith had approved this absence. (*See id.* ¶¶ 14-15, 17-20.) In sum,

-25-

Plaintiff has presented sufficient evidence for a fact finder to conclude that Plaintiff was not scheduled to work on October 23 (the day in which she allegedly did not call in), or that she otherwise complied with Defendant's notification policy for sick day absences by notifying her supervisor in advance that she would not be working the October 23 shift.  *Accord Turner v. Health Care Serv. Corp.*, No. 06 C 2399, 2009 WL 1210624, at *16 (N.D. Ill. May 4, 2009) (stating that the employer's "proferred reason for [plaintiff's] discharge–her failure to comply with the call-in policy every day of the week that she was absent–is unconvincing because the trier of fact could ultimately accept [plaintiff's] testimony that she in fact placed a timely call . . . to tell [Defendant] that she would be out all week").  For all these reasons, a genuine issue of fact exists as to whether the "legitimate, non-discriminatory reason" for termination identified by Defendant was in fact pretext for FMLA retaliation and interference with Plaintiff's FMLA rights.

Whether Plaintiff Has Sufficiently Alleged a Willful Violation of the FMLA so that the Three-Year Statute of Limitations Applies

As noted, even though Plaintiff has presented enough evidence to overcome summary judgment as to whether Defendant violated the FMLA, Plaintiff will still be barred by the three-year statute of limitations unless she has also presented enough evidence on summary judgment that the violation was "willful."  The FMLA does not define the term "willful."  Courts have interpreted "willful" to encompass situations in which the employer "knew or showed reckless disregard [as to] whether its conduct

-26-

was prohibited [by the FMLA]." *Settle v. S.W. Rodgers Co.*, 182 F.3d 909 (4th Cir. 1999) (unpublished) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 135 (1988) (construing "willfulness" under the Fair Labor Standard Act's analogous statute of limitations provision)). As the District of Maryland Court observed in *Honeycutt v. Baltimore County, Maryland*:

> Courts applying this standard have required more than mere negligence, *see Porter v. N.Y. Univ. Sch. of Law,* 392 F.3d 530, 531-32 (2d Cir. 2004) (citing *McLaughlin,* 486 U.S. at 135 n.13), and have found no willfulness where the employer granted the employee's request for leave. *See Samuels v. Kan. City Mo. Sch. Dist.,* 437 F.3d 797, 804 (8th Cir. 2006); *Edwards v. Ford Motor Co.*, 179 F. Supp. 2d 714, 719-20 (W.D. Ky. 2001). Attempts to accommodate an employee's disability or condition also indicate a lack of willfulness on the employer's part. *See Samuels*, 437 F.3d at 804; *Passauer*, 2004 WL 865829, at *2. Moreover, an employer that supplies the necessary FMLA forms, follows up with the employee regarding insufficient paperwork, and keeps the employee apprised of the application's status cannot be said to have willfully violated the statute. *See Porter v. N.Y. Univ. Sch. of Law,* No. 99 Civ. 4693(TPG), 2003 WL 22004841, at *6-8 (S.D.N.Y. Aug. 25, 2003); *Edwards*, 179 F. Supp. 2d at 720.

Civil No. JFM-06-0958, 2007 WL 1858691, at *3 (D. Md. June 18, 2007) (finding sufficient allegations of willfulness on defendant's motion to dismiss, but ultimately finding no willfulness by defendant for purposes of defendant's summary judgment motion, and granting summary judgment based on a bar under the general two-year statute of limitations), *aff'd*, 278 F. App'x 292 (4th Cir. 2008) (unpublished).

I find that Plaintiff has alleged a "willful" violation sufficient to survive summary judgment. Plaintiff has forecast sufficient evidence that she complied with what she understood to be Defendant's actual FMLA notice practice for CNAs, that she

notified the CNA coordinator responsible for scheduling and leave requests, and that she also notified her Supervisor in advance of her absence. Plaintiff has furthermore sufficiently alleged that Defendant deliberately placed her on a shift schedule on the day when she was scheduled to have surgery without notifying Plaintiff and that Defendant then falsely accused Plaintiff of an attendance violation for not calling in for that shift. As Plaintiff notes, three other CNAs have presented affidavits corroborating Plaintiff's contention that she had given ample notice that she was scheduled to be in surgery October 23, 2006. Therefore, Plaintiff has introduced sufficient evidence for the issue of whether Defendant's violation of FMLA was "willful" to go to a jury.[14]

## CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's alternative motion for summary judgment (docket no. 4) be **DENIED** and that this matter proceed to trial.

_____
WALLACE W. DIXON
United States Magistrate Judge

July 20, 2009

---

[14]  I reiterate, however, that the court is not rendering a finding here as to whether Defendant violated the FMLA or whether the FMLA violation was "willful" for purposes of applying a three-year statute of limitations. Rather, as to both of these aspects, I merely find that Plaintiff has presented sufficient evidence for these issues to go to a jury.